**MCGUIREWOODS LLP**
Anthony Q. Le (SBN 300660)
ale@mcguirewoods.com
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Telephone:  415.844.9944
Facsimile:   415.844.9922

Attorneys for Defendant
Santander Consumer USA Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| JUSTIN GARCIA and ANDREW GARCIA,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MUSHEER A. KAKISH, ET AL.,<br><br>        Defendant. | Case No.:  1:17-cv-00374-LJO-JLT<br><br>**DEFENDANT SANTANDER CONSUMER USA INC.'S REPLY IN SUPPORT  OF MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION; OR, IN THE ALTERNATIVE, STAY THE ACTION**<br><br>Complaint Filed:  March 14, 2017<br><br>Date:  May 23, 2017<br>Time:  9:30 a.m.<br>Dept: Suite 200<br><br>Honorable Mag. Jennifer L. Thurston |

**REPLY IN SUPPORT OF SANTANDER CONSUMER USA INC.'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Santander Consumer USA Inc. ("SC"), by and through its counsel, files this Reply in support of its Motion to Compel Arbitration and Stay Proceedings ("Motion") and in response to Plaintiffs' Opposition to SC's Motion ("Opposition").

The Opposition raises several unwarranted evidentiary objections, but there is no real dispute that Plaintiff entered into the Agreement, which contains an arbitration provision. Plaintiff's affirmatively allege the existence of the agreement in the Complaint.   Plaintiff also

relies on inapplicable case law to argue that arbitration cannot be compelled.  These arguments lack merit for the reasons discussed below.

## I.   ARGUMENT

The only issue before this Court is whether this dispute is subject to arbitration based on the Agreement.  Well-established legal principles require that the Motion be granted because:  (1) the Agreement is enforceable and admissible; (2) the allegations in the Complaint fall within the scope of the Agreement, including Plaintiff Andrew Garcia's claims; (3) in any event, questions of arbitrability must be decided by the arbitrator; and (4) Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.  The Agreement is Enforceable and Plaintiffs' Inadmissibility and Jurisdictional Arguments Are Unpersuasive.

Plaintiffs attempt to avoid Arbitration under the Agreement by arguing that the Agreement is inadmissible hearsay pursuant to Federal Rule of Evidence 803(6)(D).[1]  Plaintiffs argue that the Arbitration Clause is unenforceable because it bans public injunctive relief.  Plaintiffs' arguments fail because the First Amended Complaint and Motion demonstrate that the Agreement is valid, enforceable and governed by the Federal Arbitration Act ("FAA").  Moreover, the Agreement and the Declaration in support of the Motion are not hearsay and the Arbitration Clause does not ban public injunctive relief.

### i.  The Nerios Declaration Is An Admissible Business Records.

Plaintiffs argue that the Agreement and Declaration of Mark Nerios fall outside the Business Records exception.  That is not the case.  A writing is admissible under Fed.R.Evid. 803(6) if two foundational facts are proved:  "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity."  *United States v. Ordonez,* 737 F.2d at 805.  These facts

---

[1] Plaintiffs alleges that the Magistrate Judge does not have Jurisdiction to hear the Motion to dismiss as SC seeks a dismissal of this matter.  SC's Counsel sought guidance from the Clerk of Courts regarding the filing of the Motion to Compel Arbitration.  SC was directed to file the Motion before the Magistrate.

1    must be proved through the testimony of the custodian of the records or other qualified witness,

2    though not necessarily the declarant.  *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985).

3    Mark Nerios affirmed that the affidavit was based on personal knowledge obtained through his

4    employment.  Motion, Ex. A, Declaration of Mark Nerios, ¶ 2.  He affirmed that his knowledge

5    was based on records kept in the ordinary course of business.  *Id.*  Finally, he affirmed that based

6    on the business records that were kept in the course of business, the records demonstrate that

7    Plaintiff Justin Garcia executed the Agreement.  *See* Motion to Compel, Declaration of Mark

8    Nerios.  Mark Nerios is a qualified witness familiar with SC's record keeping, and his declaration

9    and the attached contract are admissible.

10                                   **ii.  Plaintiffs' Authentication Argument.**

11            Plaintiffs' own Complaint concedes that Plaintiff Justin Garcia executed a contract for the

12   purchase and financing of the 2014 Ford Mustang at Paul Blanco's Dealership.  FAC ¶1.

13   Plaintiffs' concede that the Agreement was subsequently assigned to SC.  *Id.*  Notably, Plaintiffs

14   do not contest that the Agreement attached the Nerios Declaration is, in fact, the agreement Mr.

15   Garcia executed.  There is no real dispute that this is the actual Agreement at issue.

16                                   **iii.  *McGill v. Citibank* Is Not Controlling**

17            Substantively, Plaintiffs attempt to avoid the arbitration clause by arguing that it prohibits

18   public injunctions and therefore, under a recently decided California Supreme Court case, *McGill*

19   *v. Citibank*, 2 Cal.5th 945 (2017), that the arbitration clause is unenforceable.  Plaintiffs reliance on

20   *McGill* is misplaced.  Not only is the recent state court decision not binding upon this federal

21   court, but the *McGill* is distinguishable from the instant matter.

22            In *McGill*, the borrower challenged the validity of the Arbitration Provision, alleging that it

23   waived her right to seek public injunctive relief in any forum.  The parties ***stipulated*** that the

24   arbitration provision in question in *McGill* barred public injunctive relief in ***any forum***.  *McGill v.*

25   *Citibank, N.A.,* 2 Cal. 5th 945, 956, 393 P.3d 85, 90 (2017) (emphasis added).  Based on the

26   parties' stipulation, the Supreme Court did not independently analyze the terms of the arbitration

27   agreement and did not consider whether public injunctive relief might be sought in arbitration.  *Id.*

28   This is the first distinguishing aspect from the instant matter.  Here, SC has not stipulated that the

                                                -3-

1    Arbitration Provision effectively prohibits pursuing public injunctive relief in any forum.

2    Contrary to Plaintiffs' assertions, therefore, *McGill* is factually distinguishable from the instant

3    matter and not applicable.

4         The notion that McGill controls here was soundly rejected in *DeVries v. Experian*

5    *Information Solutions, Inc.*, No. 16-CV-02953-WHO, 2017 WL 2377777, at *1 (N.D. Cal. June 1,

6    2017).   Plaintiff DeVries sued Experian Information Solutions, Inc. ("Experian") for allegedly

7    failing to provide consumers with free credit reports.   Experian's motion to compel arbitration was

8    granted.   DeVries moved for reconsideration based on *McGill*, alleging that *McGill* substantially

9    changed the law making the alleged arbitration clause unenforceable.   *Id.*   The United States

10   District Court for the Northern District of California denied the motion for reconsideration finding

11   that there was no agreement between the parties regarding the arbitration agreement's scope

12   because the parties did not stipulate regarding public injunctive relief.   *Id.*   In addition, the District

13   Court held that the arbitration provision mandated that all issues, including arbitrability be decided

14   by the arbitrator.   *Id.*   In a matter of first impression, the District Court of the Northern District of

15   California found that *McGill* did not impact the well-settled law that when the parties designate

16   the decision of arbitrability to the arbitrator, the arbitrator has the authority to determine

17   arbitrability.     *McGill* did not change that conclusion and, therefore, the Motion for

18   Reconsideration was denied.   In the absence of a stipulation on the Arbitration Provision's scope,

19   this proposition holds true.   As in *DeVries*, here, the parties have not stipulated as to the scope of

20   the arbitration provision and the arbitration provision at issue relegates all issues, including

21   arbitrability, to the arbitrator. *See* Motion, § III.B.1; Neiros Declaration ¶ 7.

22        In addition to being factually distinguishable, *McGill,* is legally distinguishable.

23   Specifically, the California Supreme Court in *McGill* did not address the California Court of

24   Appeals ruling that the FAA preempted the *Broughton-Cruz* rule.   Federal courts have previously

25   found that the *Broughton-Cruz* rule is clearly irreconcilable with subsequent United States

26   Supreme Court decisions concerning the FAA.   *See AT&T Mobility v. Concepcion* (31 S. Ct. 1740

27   (2011)) (overturning a similar rule); *see also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928,

28   934 (9th Cir. 2013) (holding that the FAA preempted California's *Broughton-Cruz* rule that claims

1   for public injunctive relief could not be arbitrated).  Plaintiffs also cite *Ferguson* in their request

2   that the Court reserve jurisdiction to hear Plaintiffs' injunctive relief claims.

3          In *Ferguson*, a putative class action was brought, which alleged that the defendant

4   systematically misled prospective students in order to entice enrollment.   Plaintiffs asserted

5   several claims under California law, including violations of the Consumer Legal Remedies Code

6   and the Unfair Competition Law seeking amongst other damages public injunction.  Each of the

7   plaintiffs' enrollment agreement contained an arbitration provision, which required submission of

8   "any and all claims to the decision of the arbitrator."  Moreover, the Enrollment Addendum stated

9   that "any dispute arising from my enrollment, no matter how described, pleaded or styled shall be

10  resolved by binding arbitration under the Federal Arbitration Act."  The Court held that those

11  terms were sufficiently broad to cover Plaintiffs' public injunction claims.  Therefore, all claims,

12  including injunctive relief claims were compelled to arbitration. The Court noted that if the

13  arbitrator found that it lacked authority under the agreements to issue an injunction, plaintiffs

14  could seek an injunction in the court, but expressly noted that it held no opinion regarding the

15  merits of such action.  Therefore *Ferguson*, requires that the FAA control this matter and the

16  issues, including those of public injunction must be compelled to arbitration.

17              **iv.  A Valid Arbitration Agreement Exists And Delegates Arbitrability**

18                      **Determination To The Arbitrator.**

19          As detailed above and in the Motion, the Agreement expressly provides that an arbitrator,

20  not a court, should determine the question of arbitrability, and it is well established that parties to a

21  contract may agree to designate an arbitrator to decide such issues.  *See Monex Deposit Co. v.*

22  *Gilliam*, 616 F. Supp. 2d 1023, 1026 (C.D. Cal. 2009); *Dream Theater, Inc. v. Dream Theater*,

23  124 Cal. App. 4th 547, 551 (2004) ("The issue of who should decide arbitrability turns on what

24  the parties agreed in their contract."); *United Broth. of Carpenters and Joiners of America etc. v.*

25  *Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) ("[W]here the parties clearly and

26  unmistakably provide otherwise, the courts will be divested of their authority and an arbitrator will

27  decide in the first instance whether a dispute is arbitrable.") (citations omitted).

28          At this point, Plaintiffs do not allege or argue that the arbitrator cannot decide the

-5-

1  arbitrability of Plaintiff Justin Garcia's claims against SC, but solely focuses on the alleged claims

2  of Andrew Garcia and the claims between Plaintiff Justin Garcia and the unserved repossession

3  agents.   As demonstrated above, Plaintiff Andrew Garcia's claims must be arbitrated and

4  Defendant SC cannot be penalized for Plaintiffs' failure to serve the remaining Defendants.

5  Therefore, under the terms of the Agreement, the arbitrator has the duty to decide whether a

6  dispute falls within the terms the Agreement.   On that basis alone, SC's Motion should be

7  granted.

8  **v.   This Matter Is Governed By The Federal Arbitration Act.**

9  Plaintiffs argue that the Arbitration Provision is governed by California law and pursuant

10  to the California Arbitration Act, the Court is obligated to choose a neutral arbitrator.  *Opposition,*

11  § G.  As demonstrated in the Motion, the Arbitration Provision expressly states that it is governed

12  by the FAA:  "Any arbitration under this Arbitration Provision shall be governed by the Federal

13  Arbitration Act (9 U.S.C. § 1, *et seq*.)."   Neiros Decl., ¶ 7, Exh. A.  The Arbitration Provision's

14  express designation of the FAA as its governing law, without more, is sufficient to bring it within

15  the FAA's purview.  *See*, *e.g.*, *Rodriguez v. American Techs., Inc.*, 136 Cal. App. 4th 1121-22

16  (2006) (if the parties expressly state that the FAA applies, then California state arbitration law is

17  preempted).

18  Further, even if the Arbitration Provision did not designate the FAA as its governing law,

19  the result is the same.  The Agreement at issue is the Retail Installment Sale Agreement pursuant

20  to which SC, an out-of-state lender, provided Plaintiff, a California citizen, with financing for the

21  purchase of the Vehicle.   FAC ¶ 7; Neiros Decl. ¶ 4, 6.   Thus, the Agreement "involves

22  commerce" within the meaning of Section 2 of the FAA.  *See*, *e.g.*, *Citizens Bank v. Alafabco,*

23  *Inc.*, 539 U.S. 52, 56 (2003) (interpreting "involving commerce" requirement under FAA broadly

24  to include intra-state loan transaction:  "it is perfectly clear that the FAA encompasses a wider

25  range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate

26  commerce[.]'"); *Rota-McLarty*, 700 F.3d at 696-98; *Allied-Bruce Terminix Companies, Inc.*, 513

27  U.S. at 273-74; *United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998) (transactions with an

28  FDIC-insured institution establish an interstate commerce nexus under the Commerce Clause even

1    if the transactions are wholly intrastate), *cert. denied*, 526 U.S. 1050 (1999); *Providian Nat'l Bank*

2    *v. Screws*, 894 So.2d 625, 627 (Ala. 2003) (credit card agreement between bank and the holders of

3    its credit card clearly involves interstate commerce); *Anderson v. Delta Funding Corp.*, 316 F.

4    Supp. 2d 554, 561 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the

5    FAA because of the banking industry's connection to commerce").

6          Plaintiffs also attempt to avoid the agreed upon arbitration forum, the American

7    Arbitration Association, by alleging that because the arbitration provision allows the parties to

8    agree to another forum, it is unconscionable. *Opposition*, § F. Plaintiffs support this argument by

9    alleging that because SC does not agree to JAMS, it turns the contract terms of "may choose" into

10   "must choose." *Id.* Plaintiffs' strained reading of the contract terms suggests that SC has

11   unbounded discretionary power. *Id.* Plaintiffs' argument fails to recognize one fundamental

12   aspect of the Agreement, Plaintiff Justin Garcia executed an Agreement which identified the

13   American Arbitration Association as ***the*** proper forum for arbitration, unless both parties agree

14   otherwise. Neiros Decl. ¶ 7, Exh. A. It is established California precedent that arbitration

15   agreements are on the same footing as other contracts. In entering the Arbitration provisions, the

16   "Arbitration's consensual nature allows the parties to structure their arbitration agreements as they

17   see fit. They may limit the issues to be arbitrated, specify the rules and procedures under which

18   they will arbitrate, designate who will serve as their arbitrator(s), and limit with whom they will

19   arbitrate." *Bunker Hill Park Ltd. v. U.S. Bank Nat'l Ass'n,* 231 Cal. App. 4th 1315, 1326, 180 Cal.

20   Rptr. 3d 714, 723 (2014) (*citing Network Capital Funding Corporation v. Papke* (2014) 230

21   Cal.App.4th 503, 509, 178 Cal.Rptr.3d 658.) In the instant matter, the Arbitration Provision

22   identifies the specific forum for arbitration, the procedures under which it will be governed and the

23   scope of the arbitrable issues. Neiros Decl. ¶ 7, Exh. A. Plaintiff Justin Garcia agreed to the

24   arbitration provision and the use of America Arbitration Association as the arbitration forum. *Id.*

25   Plaintiffs' argument that SC abused its discretionary power because it refused to concede to

26   Plaintiff's demand for another forum, when the agreement clearly states that the arbitration will

27   proceed in the American Arbitration Association, is unsupported by the Arbitration Provision,

28   precedent, or case law.

**B.  The Asserted Claims Fall Within The Scope Of The Arbitration Provision.**

**i.  Plaintiffs' Claims Fall Within The Scope of the Arbitration Provision**

Plaintiffs attempt to avoid the Arbirtation Provision under the Agreement by arguing that Plaintiff Andrew Garcia cannot be compelled to arbitration as he was not a signatory to the Agreement containing the Arbitration Provision.  *Opposition § D.*  Plaintiffs argue that the only applicability of an arbitration provision to a nonsignatory is determined by a confidential relationship between the nonsignatory and one of the parties to the Arbitration Provision.  *Id.* Ignoring the fact that we are unaware of the relationship between the two Plaintiffs and whether their relationship would be considered confidential, Plaintiffs assertion ignores the established precedent that a nonsignatory to an arbitration provision can be equitably estopped from avoiding arbitration if the claims asserted are intimately intertwined requiring arbitration of the entirety of the matter or the nonsignatory is availing himself of the Agreement.   In the instant matter, Plaintiffs' claims are intimately intertwined and the nonsignatory Plaintiff Andrew Garcia is availing himself of the Agreement; therefore, Plaintiffs' Claims fall within the scope of the Arbitration Provision.

First, the general rule is that there is a strong federal policy in favor of arbitration agreements *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26; *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, 8 Cal.Rptr.3d 517, 82 P.3d 727.)  Questions of arbitrability are to be addressed with regard to that policy. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

The entirety of Plaintiffs' causes of action in this matter arise from the Agreement and Plaintiff Justin Garcia's failure to perform under the Agreement which required the subsequent repossession of the vehicle.  *See generally* FAC.  Plaintiff Justin Garcia executed a contract for the financing of a 2014 Ford Mustang. FAC ¶ 1; Neiros Decl. ¶ 7, Exh. A.  The Agreement contained a broad Arbitration Provision that required "Any claim or dispute, whether in contract, tort, statute or otherwise … which arises out of or relates to your credit application, purchase or condition of

1    this vehicle, this contract or any resulting transaction or relationship, (including any such

2    relationship with third parties who do not sign this contract) shall, at your or our election be

3    resolved by a neutral, binding arbitration and not by a court action."   Neiros Decl. ¶ 7, Exh. A.

4    The broad language of the Arbitration Provision encompasses the repossession in this matter.

5              Second, while, Plaintiffs' argument that only a nonsignatory can compel arbitration against

6    a signatory under the theory of equitable estoppel falls flat based on established case law.   The

7    federal courts have identified five theories pursuant to which an arbitration clause can be enforced

8    by ***or against*** a nonsignatory.  *Boucher v. All. Title Co., Inc.,* 127 Cal. App. 4th 262, 268, 25 Cal.

9    Rptr. 3d 440, 444 (2005) (*emphasis added*); (*See E.g., Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.* (3d

10   Cir.1999) 181 F.3d 435, 445–446; *Thomson–CSF, S.A. v. American Arbitration Assn.* (2d

11   Cir.1995) 64 F.3d 773, 776.).   "Under the [United States Arbitration Act], applying the doctrine of

12   equitable estoppel as a matter of federal substantive law of arbitrability, federal precedent

13   unanimously holds that, [a]lthough arbitration is a contractual right that is generally predicated on

14   an express decision to waive the right to trial in a judicial forum, ... the lack of a written arbitration

15   agreement is not an impediment to arbitration.'"  *See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist*

16   *Growers, Inc.* (11th Cir. 1993) 10 F.3d 753, 757; *Metalclad, supra,* 109 Cal.App.4th at p. 1712, 1

17   Cal.Rptr.3d 328; *See also International Paper, supra,* 206 F.3d at p. 418.

18             Third, Plaintiff Andrew Garcia is equitably estopped from avoiding arbitration because as

19   demonstrated, Plaintiffs Justin Garcia and Andrew Garcia's claims are "intimately founded in and

20   intertwined" with the Agreement as each claim arises out of the same occurrence, namely the

21   repossession, and can be traced back to the terms of the Agreement.  *See e.g. Goldman v. KPMG*

22   *LLP*, 173 Cal.App. 4th 209, 221 (internal citations omitted) (allowing a nonsignatory to enforce

23   arbitration under equitable estoppel when the claims are intimately founded in and intertwined).

24   In interpreting the *Goldman* decision, the Ninth Circuit found that the correct analysis is whether

25   Plaintiffs would have a *claim* independent of the existence of the Purchase Agreement.  *Kramer v.*

26   *Toyota Motor Corp.,* 705 F.3d 1122, 1131–32 (9th Cir. 2013).  Here, Plaintiffs Justin Garcia and

27   Andrew Garcia's claims arise out of the same occurrence, namely the repossession, and can be

28   traced back to the terms of the Agreement.   Therefore, Plaintiff Andrew Garcia's claims are

"intimately founded in and intertwined" with the Agreement.  *Id.*  Plaintiff Justin Garcia's obligations and subsequent default caused the repossession of the subject vehicle pursuant to the RISC.  There simply can be no dispute that this action, at the very least, arises out of the Agreement and alleges statutory violations of Civil Code § 2983.2.  *Id.*

Finally, Plaintiff Andrew Garcia is availing himself of the Agreement and therefore is equitably estopped from avoiding arbitration.  "[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. ...." *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 269, 25 Cal. Rptr. 3d 440, 444 (2005).  Plaintiff Andrew Garcia is attempting to avail himself of the contract between SC and Justin Garcia by alleging that SC is somehow liable for alleged damages that occurred during the repossession with only the repossession agency defendants present.  *See generally* FAC.  In fact, in the Opposition, Plaintiffs go to great lengths to argue that SC has no relationship with the repossession defendants.  *See* Opposition.  Yet, Plaintiffs attempt to allege that SC is liable for the damages occurred during repossession based on the Agreement.  Plaintiffs cannot avail themselves of the Agreement on one hand and then attempt to avoid the arbitration provision in that Agreement in the other.  *See Boucher v. All. Title Co., Inc., supra.*  By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.  *Sunkist, supra,* 10 F.3d at pp. 757–758; *Hughes, supra,* 659 F.2d at pp. 840–841.

Finally, Federal Courts of Appeals have repeatedly held that under equitable estoppel principles and in appropriate factual circumstances, a signatory to an agreement containing an arbitration clause may be compelled to arbitrate its claims against a nonsignatory when the relevant causes of action rely on and presume the existence of the contract. E.g., *Choctaw Generation Ltd. v. American Home Assur. Co.* (2d Cir.2001) 271 F.3d 403, 406–408; *Grigson v. Creative Artists Agency* (5th Cir.2000) 210 F.3d 524, 527–531; *MS Dealer, supra,* 177 F.3d at pp. 946–948; *Sunkist, supra,* 10 F.3d at pp. 756–757; *Hughes Masonry v. Greater Clark County School Bldg.* (7th Cir.1981) 659 F.2d 836, 838; see also *Sam Reisfeld & Son Import Company v.*

1   *S.A. Eteco* (5th Cir.1976) 530 F.2d 679, 681.   Therefore, Plaintiffs in this matter must be

2   compelled to arbitration.

3                    **ii.   SC Should Not Be Penalized For Plaintiffs' Failure To Serve The**

4                           **Remaining Defendants.**

5           Plaintiff Justin Garcia filed the Original Complaint on March 14, 2017.  Doc. 1. The First

6   Amended Complaint was filed on April 29, 2017.  FAC.  At the time of this writing, Plaintiffs had

7   failed to serve the co-defendants Musheer A. Kakish and Kieth Church.  *See generally,*

8   Opposition.    While it has taken Plaintiffs over four (4) months since the original filing of the

9   Complaint to serve the remaining defendants in this matter, Plaintiffs attempt to use their own

10  delay as an alleged factor of why the Motion is premature.  *Id.*  The Motion is not premature as SC

11  is required to respond to the Complaint and SC's Motion was timely filed.   As demonstrated

12  above, allowing Plaintiffs to use their delay to find that the Motion was premature, would allow

13  Plaintiffs to avoid the terms of the executed Agreement.   In the instant matter, a valid agreement to

14  arbitrate exists and encompasses the entire dispute at issue.   For these reasons, the claims must be

15  compelled to arbitration.

16          As stated above, a nonsignatory to an arbitration provision can be compelled to arbitration

17  under an equitable estoppel theory when the causes of action are intimately intertwined.  *See e.g.*

18  *Goldman v. KPMG LLP.*  For all of these reasons, pursuant to the FAA, the Court should compel

19  this matter to arbitration.

20              **C.  Although the Court May Stay This Action Pending Resolution Of the Disputes**

21                   **Through Arbitration, It Should Dismiss Plaintiff's Claims Against SC**

22                   **Pursuant to Rule 12(b)(6).**

23          Relying on an unpublished Second Circuit opinion, Plaintiffs request that this matter be

24  stayed instead of dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs ignore

25  binding precedent permitting dismissal when all claims are arbitrable.  *See Chappel v. Laboratory*

26  *Corp. of America*, 232 F.3d 719, 726 (9th Cir. 2000) (holding that where "claim for direct judicial

27  review . . .  is barred by the [the contract's] valid and enforceable arbitration clause[,]  [t]he district

28  court properly dismissed his complaint under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim.").  As demonstrated above and throughout the Motion, the Arbitration Provision is enforceable and encompasses all of Plaintiffs' claims against SC, Plaintiffs' entire action is subject to binding arbitration.  Accordingly, in lieu of a stay, SC respectfully requests that this Court dismiss this action in its entirety with prejudice so it may be litigated via arbitration.

**II. CONCLUSION**

For all of the foregoing reasons and as set forth in SC's Motion, SC respectfully requests that this Court order Plaintiffs to arbitrate their claims on an individual basis and dismiss, or in the alternative, stay these proceedings.

DATED:  June ___, 2017                          MCGUIREWOODS LLP


                                        By:    */s/ Anthony Q. Le*
                                               Anthony Q. Le
                                               Attorneys for Defendant
                                               Santander Consumer USA Inc.

1  **<u>CERTIFICATE OF SERVICE</u>**

2       I hereby certify that on June 17, 2017, I electronically filed the foregoing document

3  entitled **DEFENDANT SANTANDER CONSUMER USA INC.'S REPLY IN SUPPORT OF**

4  **MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION; OR, IN THE**

5  **ALTERNATIVE, STAY THE ACTION** with the Clerk of the Court for the United States

6  District Court, Central District of California using the CM/ECF system and served a copy of same

7  upon all counsel of record via the Court's electronic filing system.

8

9

10                        By: */s/ Anthony Q. Le*

11

12

-13-