# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN GARCIA and ANDREW GARCIA, | Case No.: 1:17-cv-00374-JLT |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR AN EXTENSION OF TIME (Doc. 24) |
| v. | |
| MUSHEER A. KAKISH, et al., | FINDINGS AND RECOMMENDATIONS GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION (Doc. 19) |
| Defendants. | |

Justin Garcia and Andrew Garcia assert the defendants are liable for violations of the Fair Debt Collection Practices Act for actions taken during the course of a repossession of his vehicle. (Doc. 9) Santander Consumer USA Inc. asserts that Justin Garcia signed a binding arbitration agreement. Therefore, Santander seeks to compel arbitration and dismiss the action or to stay the matter to allow completion of arbitration. (Doc. 19) Because the Court finds that Justin Garcia agreed to arbitration and Andrew Garcia's claims are factually and legally intertwined with the contract setting forth the arbitration provision, the Court **RECOMMENDS**[1] Santander's motion to compel arbitration be **GRANTED IN PART**.

///

---

[1] Plaintiffs assert a Magistrate Judge lacks the authority over this matter. They are mistaken. Though they are correct that a Magistrate Judge may not issue a dispositive order absent consent of the parties, the Court here is issuing findings and recommendations to the District Judge. This is a proper exercise of authority.

1

**I.   Background**

Justin Garcia asserts that he bought "an automobile on credit from Paul Blanco's Good Car Company, an auto dealership located in Bakersfield, California, pursuant to a conditional sales contract. The contract is regulated by the Rees- Levering Automobile Sales Finance Act." (Doc. 9 at 2, ¶ 1) "Santander Consumer USA Inc., an automotive lender, took assignment of the conditional sales contract from the dealership." (*Id.*) According to Plaintiffs, "[w]hen Justin Garcia fell behind on his payments, Santander hired an unlicensed repossession agency, third party Par, Inc., to repossess plaintiff's vehicle." (*Id.*) Par, Inc. then subcontracted the repossession to Musheer Kakish and Keith Church, who were doing business as All County Recovery[2]. (*Id.*)

Plaintiffs assert they were in the vehicle in a Walmart parking lot when "[t]wo repo men from All County Recovery suddenly pulled up in a tow truck, and blocked the vehicle from behind." (Doc. 9 at 2, ¶ 2) According to Plaintiffs, "One repo man descended from the tow-truck, came around to Justin Garcia's window, and announced the vehicle was being repossessed." (*Id.*) Plaintiffs allege that "Justin Garcia objected to the repossession," after which "[t]he repo man forcibly opened the driver's door to plaintiff's vehicle, and slammed it into another car which was parked beside plaintiff, damaging that vehicle." (*Id.*) Plaintiffs report they were still in the vehicle when the repo man signaled to the driver of the tow truck, which "banged into the vehicle from behind, and began lifting it in the air." (*Id.*) Plaintiffs allege "Andrew Garcia hit his head and was injured." (*Id.*)

Plaintiffs assert that after they exited the vehicle, they "continued to object to the repossession and the damage that had been done to the other vehicle." (Doc. 9 at 2, ¶ 3) They allege, "All County Recovery's repo man became enraged, and stated he had called the police, who were on their way to the scene. This was a lie." (*Id.* at 2-3, ¶ 3) Plaintiffs assert that "eventually," the keys to the vehicle were turned over by Justin Garcia." (*Id.* at 3, ¶ 3) After the repossessors "dragged the vehicle to another part of the parking lot," one of them got in the vehicle and drove it away, while the other drove the tow truck. (*Id.*)

---

[2] At the hearing, plaintiffs' counsel reported that he believed that Kakish and Church were likely not the correct defendants and that, instead, an entirely different defendant—a corporation—may be the proper party. It is unclear how or whether this will impact the allegations of the operative complaint.

According to Plaintiffs, "All County Recovery absconded with some of plaintiff Justin Garcia's personal possessions still in the vehicle." (Doc. 9 at 3, ¶ 6) In addition, Plaintiffs assert that "All County Recovery failed to notify plaintiff Justin Garcia in writing of the seizure of the vehicle within 48 hours, and failed to mail him a written inventory of the personal items it had seized," in violation of the Collateral Recovery Act. (*Id.*) Further, Plaintiffs assert that when Justin Garcia called All County Recovery to obtain his possessions, he was informed that "he would be charged more than $200 for the storage of his property." (*Id.* at 4, ¶ 7)

Plaintiffs allege that "Santander never mailed plaintiff Justin Garcia a written post-repossession notice ("NOI"), as required by Civil Code § 2983.2(a)." (Doc. 9 at 5, ¶ 9) However, Plaintiffs report Justin Garcia "later obtained a copy of an alleged NOI, which Santander claimed to have issued." (*Id.*) Plaintiffs contend the NOI was a form "Santander uses for all California borrowers whose vehicles it repossesses," and was defective because it failed to disclose information including "the due date of a monthly installment payment coming due during the reinstatement period," "the due date and amount of a late fee on the monthly installment payment coming due during the initial or extended reinstatement period," and "that plaintiff would have to pay a third party repossession agency for administrative fees and vehicle storage fees." (*Id.*)

Plaintiffs allege that "Justin Garcia did not reinstate or redeem his contract, and Santander sold the vehicle." (Doc. 9 at 6, ¶ 10) In addition, Plaintiffs contend that notwithstanding this defective NOI, "Santander assessed plaintiff Justin Garcia a deficiency balance" despite knowing one was not owed, and "reported it to the three credit reporting agencies." (*Id.*, ¶ 11) Plaintiffs assert, "In order to force plaintiff Justin Garcia to pay a debt he didn't owe, Santander continued reporting the unlawful deficiency balance each and every month from the time the deficiency balance was assessed, through the present." (*Id.*, ¶ 12)

Plaintiffs allege that "one or more of All County Recovery's employees who assisted in the repossession was not properly registered as a repossession agency employee with the Bureau of Security and Investigative Services, and therefore had no legal right to participate in locating or repossessing [the] vehicle." (Doc. 9 at 3, ¶ 5) Plaintiffs assert that "defendant All County Recovery is regularly sending unlicensed and unregistered personnel to repossess the vehicles of hundreds or

thousands of California borrowers per year, and that a public injunction is necessary to put a stop to this illegal, unlicensed conduct, which harms the general public and is inherently dangerous." (*Id.*) In addition, Plaintiffs contend a public injunction is necessary "to restrain All County Recovery from charging personal property or vehicle storage fees unless they are (1) properly disclosed in written notices to borrowers, and (2) in the same amount as authorized by the secured party." (*Id.*, ¶ 8)

Similarly, Justin Garcia seeks a public injunction against Santander, restraining the company "from using its current form NOI template, from collecting any deficiency balances from those California borrowers to whom it sent a non-compliant NOI, and from making any derogatory credit reporting of such deficiency balances." (*Id.* at 7, ¶13)

Based upon the actions taken during the course of the repossession, Plaintiffs identify the following causes of action in the First Amended Complaint: (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (2) violations of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788; (3) violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1; (4) declaratory relief; (5) conversion; (6) battery; (7) violations of the Collateral Recovery Act; (8) and violations of California's unfair competition law, Cal. Bus. & Prof. Code §17200. (*See generally* Doc. 9 at 8-19)

On May 19, 2017, Defendant Santander filed the motion to compel arbitration now pending before the Court, asserting Plaintiff had agreed to arbitrate all claims related to the financing and purchase of his vehicle. (Doc. 19) Plaintiffs filed their opposition to the motion on June 8, 2017. (Doc. 22) On June 17, 2017, Santander filed a motion for a two-day extension of time to file the brief in reply (Doc. 24), which Plaintiffs opposed (Doc. 25).

**II.     Motion for an Extension of Time**

As an initial matter, Defendant sought leave to file an untimely reply brief pursuant to Rule 6 of the Federal Rules of Civil Procedure, which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time… on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B).

The Supreme Court explained "excusable neglect" encompasses a failure to comply with filing deadlines "caused by inadvertence, mistake, or carelessness, as well as intervening circumstances

beyond the party's control." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388 (1993). To determine whether there has been "excusable neglect," the Court considers: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004), citing *Pioneer*, 507 U.S. at 395.

Defendant contends the untimely filing is due to excusable neglect because counsel did not receive an ECF notice that the opposition was filed. (Doc. 24 at 2) Specifically, Alexander Gershen, an attorney at McGuire Woods LLP, counsel for the defendant, asserts that he was monitoring the cases for Antony Le while Mr. Le was out of the country. (Doc. 24-1 at 2) Mr. Gershen believed he was receiving the ECF notices on behalf of Mr. Le, but reports that an ECF notice related to the opposition was not received. (*Id.*) Mr. Gershen asserts he first learned of the filing of the opposition on June 16, 2017, after which Defendant requested Plaintiff agree to an extension of time for the filing. (*Id.*) The next day, Defendants filed the motion for an extension of time with the reply brief.

Plaintiffs oppose the extension of time, asserting that "Santander has not shown good cause for leave to file a late reply brief." (Doc. 25 at 3) Plaintiffs observe, "Mr. Le is defendant's only counsel of record in this case, and yet he submits no declaration in support of the application. Even if he was out of the country at the time of the opposition (which is not confirmed by any testimony from Mr. Le himself), he failed to make suitable arrangements for another lawyer to cover in his absence." (*Id.*) According to Plaintiffs, despite the assertion that Mr. Gershen was "monitoring the case in Mr. Le's absence,… Mr. Gershen never took the time to appear via ECF, so he was guaranteed *not* to receive anything from ECF about this case." (*Id.*)

Significantly, as Defendant observes, courts have determined "failure to receive an ECF notification can be adequate grounds for finding excusable neglect." (Doc. 24 at 2, citing, *e.g.*, *Kucik v. Yamaha Motor Corp.*, 2009 U.S. Dist. LEXIS 96704 (N.D. Ind. Oct. 16, 2009) (granting enlargement of time for responding to motion to dismiss, where counsel did not receive ECF notice); *Alexander v. Principi*, 16 Fed, Appx.755 (9th Circ. 2001) (granting enlargement of time to file reply brief); *Jones v. Neven*, 2011 WL 2132978 (D. Nev. May 26, 2011) (granting enlargement of time to file a late

Reply for procedural issues). Indeed, the factors set forth by the Ninth Circuit support a similar conclusion here.

The reply brief was to be filed on Thursday, June 15 and the request for an extension time with the reply brief was filed on Saturday, June 17. Thus, the filing delay was only two days, or one business day, and had minimal impact upon the judicial proceedings. Plaintiffs were not entitled to file a response to the reply and lost just one business day to review the arguments presented in the reply brief before the hearing. While the awareness of the filing of the opposition was certainly within counsel's control—as even if an ECF notice was not received, the docket could be reviewed for an opposition— there is no evidence that Defendant acted in bad faith or with dilatory motives.

On the other hand, at the hearing, the Court inquired as to the prejudice suffered by the plaintiffs due to the late filing and they offered none. Likewise, they refused the Court's offer to continue the hearing to make up for the time lost caused by the late filing. Accordingly, the Court finds the factors support a finding that the untimely filing was due to excusable neglect and the plaintiffs suffered no prejudice. Thus, the motion for an extension of time (Doc. 24) is **GRANTED**.

### III.   Evidentiary Objections

In support of the motion to compel arbitration, Defendant submitted the declaration of Mark Neiros who is the Senior Vice President Servicing and Recovery Operations at Santander. (Doc. 19-1) Mr. Neiros reports that he is "familiar with the operations and record-keeping" of Santander, which "issues automobile loans directly to consumers or takes assignment of vehicle sales contracts, also known as Retail Installment Sale Contracts, from automobile dealerships along with the rights, claims, and defenses provided by the contracts, including the right to receive payments from the vehicle purchases." (*Id.* at 2, ¶ 4) Mr. Neiros reviewed Santander's "records relating to Plaintiff's account," and the "records reflect that on September 5, 2015, Plaintiff executed a 'Retail Installment Sale Contract-Simple Finance Charge (With Arbitration Provision)'… in connection with the purchase and financing of a 2014 Ford Mustang (the 'Vehicle') from an auto dealership." (Doc. 19-1 at 2, ¶ 6) After this, the contract was assigned to Santander. (*Id.* at 2, ¶ 6) Mr. Neiros attests that the document attached to his declaration is, in fact, the contract that Justin Garcia signed. (*Id.* at 3, ¶ 7) He asserts that the contract is a "business record of [Santander] that [is] kept and maintained in the regular and

routine course of SC's business activity." (*Id.* at 3, ¶ 10) According to Mr. Neiros, "It was a regular and routine practice of SC to keep and maintain such records," and the contract was "maintained by a person or persons with knowledge of and a business duty to maintain, record, or transmit such records." (*Id.*)

Plaintiffs assert that "Santander has also failed to submit any admissible evidence of an arbitration contract." (Doc. 22 at 4) Plaintiffs contend the agreement attached to the declaration of Mr. Neiros "purports to be between "Paul Blanco's Good Car Company of Bakersfield" and Justin Garcia." (Doc. 22 at 6) Plaintiffs argue, "Neither Paul Blanco's nor Justin Garcia have testified about the purported contract, and it is therefore not authenticated by any 'testimony by a witness with knowledge.'" (*Id.*, citing Fed. R. Evid. 901.) Plaintiffs argue that because Mr. Neiros' knowledge "comes only second hand, from reviewing Santander's records," the document has not been properly authenticated. (*Id.* at 7) In addition, Plaintiffs contend that as the vice president of recovery operations, Mr. Neiros is not the custodian of record." (*Id.*) Plaintiffs conclude the contract "is unauthenticated and inadmissible hearsay." (*Id.* at 4)

Notably, there is no requirement that the signatories to the contract authenticate it. (Fed. R. Evid. 901(b)(1). It is sufficient if a person testifies that the thing is what it is claimed to be. (*Id.*) Mr. Neiros has set forth a sufficient basis for his knowledge that this is the contract referenced in the plaintiffs' operative complaint. In addition, contracts are not hearsay and no hearsay exception need be shown for their admissibility. In *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004), the Ninth Circuit held, "out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay. They are considered "verbal acts." Thus, the Court finds that Mr. Neiros adequately sets forth his basis for knowledge that the contract he submits is, in fact, the actual contract signed by Justin Garcia and Paul Blanco's Good Car Company of Bakersfield. Thus, he satisfies § 901(b)(1). Likewise, he establishes that Santander has maintained this document in the course of its business as the assignee of the contract.

Moreover, "[o]n a motion to compel arbitration, the court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure.*" Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424 (E.D. Cal. Dec. 21, 2011). In evaluating a motion for

summary judgment, "courts focus on admissibility of the evidence's content, not its form." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus a party must produce evidence that *could* be rendered in an admissible form. *Celotex*, 477 U.S. 317. It is indisputable that the contract could be properly authenticated and presented in admissible form. Importantly, Plaintiffs admit that Justin Garcia entered into the sales contract in the complaint and he does not deny that the contract offered by the defendant is, in fact, the very same contract. Accordingly, Plaintiffs' evidentiary are **OVERRULED**.

### IV.   Arbitration Terms

The Retail Installment Sale Contract includes an arbitration provision, informing the buyer that it affects legal rights. (Doc. 19-1 at 8) The arbitration provision indicates that it applies to "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of th[e] Arbitration Provision, and the arbitrability of the claim or dispute between [the buyer] and [the seller] or [the seller's] employees, agents, successors or assigns, which arises out of or relates to [the buyer's] credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship…" (*Id.*) Thus, the provision encompasses "relationship[s] with third parties who do not sign [the] contract." (*Id.*) The buyer is informed that each of these claims "shall… be resolved by neutral, binding arbitration and not by court action." (*Id.*)

Further the terms indicate that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. Seq.) and not by any state law concerning arbitration." (Doc. 19-1 at 8)

### V.   The Federal Arbitration Act ("FAA")

The FAA applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. It is undisputed that Defendant operates nationwide and its shipping business affects interstate commerce. Thus the FAA governs the arbitration policy.

Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A

party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir. 2000), citing 9. U.S.C. § 4. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" (emphasis added)). Importantly, because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

A party opposing arbitration has the burden to demonstrate the claims at issue should not be sent to arbitration. *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**VI.    Discussion and Analysis**

    **A.    Validity of the arbitration agreement**

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Because Plaintiffs are residents of this state and Defendant seeks to compel arbitration in California, the Court looks to the state's law to determine whether there is a valid arbitration agreement between the parties.

California law provides that the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). An arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011); *see also* Cal. Code Civ. Proc. § 1281 (explaining an arbitration agreement may only be invalidated upon the same "grounds as exist for the revocation of any contract").

Under California law, an arbitration agreement may be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts*, Inc., 51 Cal.App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen,* 51 Cal.App.4th at 1532. Consequently, "[c]ourts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."' *Id.* (quoting *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 99 (2000)).

Plaintiffs do not argue that the parties were not capable of consent, did not consent, or that there was not a lawful object to the contract. Further, Plaintiffs do not argue there was insufficient cause or consideration for the contract entered into by Justin Garcia for the purchase of the vehicle. Rather, Plaintiffs contend the arbitration provision is not enforceable because it bans public injunctive relief.[3] (Doc. 22 at 7-8) In addition, Plaintiffs contend the arbitrator selection clause is "unconscionable and unenforceable." (*Id.* at 12)

---

[3] At this time, however, it is unclear whether the plaintiffs will pursue this relief in light of the revelations of counsel made at the hearing. *See* Footnote 2.

1. *McGill v. Citibank* does not mandate a finding that the arbitration agreement is unenforceable.

Plaintiffs rely upon *McGill v. Citibank*, 2 Cal.5th 945, 952 (2017) to assert that the arbitration provision "is contrary to California public policy and is thus unenforceable under California law." (Doc. 22 at 8) Plaintiffs observe the arbitration provision states: "Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action." (*Id.* at 7, emphasis omitted) Plaintiffs argue, "This language directly bans arbitration of any private attorney general action for public injunctive relief, since such a claim is never brought 'on an individual basis,' but always on behalf of the general public. And, since the alleged arbitration clause does not otherwise permit a court action for such private attorney general claims, it completely waives the consumer's statutory right to seek public injunctive relief as a private attorney general." (*Id.* at 7, footnote omitted) Therefore, Plaintiffs contend the provision is unenforceable under *McGill*. (*Id.* at 7-8)

In *McGill*, the California Supreme Court was not considering the validity of an entire arbitration agreement but only the validity of a *provision* in the agreement that waived the "right to seek public injunctive relief *in any forum*." *See id.*, 2 Cal. 5th at 956 (emphasis in original). The parties agreed the scope and effect of the provision was to waive the right to injunctive relief in any forum, and as a result, the court examined only the waiver. *Id.* The Court concluded "a provision in *any* contract— even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *Id.* at 962 (emphasis in original).

In contrast, the parties in this case do not have an agreement regarding the scope and effect of the provision. There is not an explicit provision waiving a buyer's right to seek public injunctive relief, and no agreement between the parties regarding whether the effect of the provision constitutes such a waiver. Rather, the arbitration agreement specifically provides that "the interpretation and scope" is a matter left to the determination of the arbitrator. (Doc. 19-1 at 8)

Significantly, as Defendant argues, the argument that *McGill* controls with agreements similar to that now before the Court was rejected in *DeVries v. Experian Information Solutions, Inc.*, 2017 WL 2377777, at *1 (N.D. Cal. June 1, 2017). In *DeVries*, the court granted the defendant's motion to

compel arbitration, after which the California Supreme Court issued its decision in *McGill*. The plaintiff sought reconsideration of the court's order to arbitration. The court observed the arbitration provision between DeVries and Experian stated, "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision." *Id.* at *3. As a result, the Court concluded whether the "agreement purports to waive DeVries's right to seek public injunctive relief in all fora, and, if so, what impact this has on the enforceability of the arbitration agreement as a whole, is for the arbitrator to decide." *Id.* Likewise, here, the agreement leaves the determinations regarding scope and arbitrability of claims to the arbitrator. (Doc. 19-1 at 8) Consequently, the Court finds *McGill* does not mandate a finding that the arbitration provision is unenforceable.

### 2. Unconscionability of the arbitrator selection clause does not render the agreement unenforceable.

Plaintiffs contend the arbitrator selection clause in the agreement is "unconscionable and unenforceable." (Doc. 22 at 11) In relevant part, the arbitration agreement states: "You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval." (Doc. 19-1 at 8) Plaintiffs assert, "The words 'subject to our approval' in this clause unconscionably grant Santander exclusive control over who the arbitrator will be." (*Id.*) Plaintiffs assert they "offered to arbitrate before JAMS, notwithstanding [their belief] that the clause is unenforceable, to avoid an expensive motion" but "Santander would not agree to JAMS." (*Id.* at 13) Plaintiffs contend this refusal demonstrates the unconscionability of the provision. (*Id.*)

The selection clause provision is procedurally unconscionable because it was offered as part of "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *See Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). Defendant's position set forth in the reply papers that the parties agreed to use AAA was abandoned at the hearing and the language of the arbitration provision in this regard does not support that interpretation. Rather, the Court finds the selection clause is substantively unconscionable also because it gives Defendant the ultimate authority over who would arbitrate the claims. *See Stirlen*, 51 Cal.App.4th at 1532.

On the other hand, Plaintiffs do not argue that the *entirety* of the arbitration agreement is unconscionable and address only the arbitrator selection clause. California law provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation marks omitted).

The Court finds the unconscionable provision does not permeate the entire arbitration agreement. *See, e.g., Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011) (finding three substantively unconscionable provisions could be severed from an arbitration agreement which was not "permeated by unconscionability," thus rendering the agreement enforceable); *Stacy v. Brinker Rest. Corp.*, 2012 U.S. Dist. LEXIS 150345, at * 31-32 (E.D. Cal. Oct. 18. 2012) (explaining the single substantively unconscionable provision could be severed because it was "collateral to the Agreement and does not permeate the Agreement with unconscionability"). Thus, the Court may sever the arbitrator selection clause.

Moreover, under 9 USCS § 206, the Court has the authority to select an arbitrator for the parties. In relevant part, this section reads,

> A court having jurisdiction under this chapter [9 USCS §§ 201 et seq.] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. *Such court may also appoint arbitrators in accordance with the provisions of the agreement*.

*Id.* (emphasis added). Therefore, the Court finds it has the power to reform the agreement regarding the selection of the arbitrato, and recommends the arbitrator selection clause be severed from the agreement. To allow both sides to participate in the selection of the arbitrator, the Court recommends three arbitration agencies, JAMS, AAA and ADR Services, Inc., be identified and that each side be allowed to strike one, with the one remaining becoming the ultimate arbitrator agency to be used.

### B. Whether the Agreement encompasses the Disputed Issues

To determine whether an arbitration agreement encompasses particular claims, the Court looks

to the plain language of the agreement. "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960). The arbitration provision in this case confers power upon the arbitrator to determine "the arbitrability of the claim or dispute." (Doc. 19-1 at 8) Thus, the agreement encompasses even the parties' disagreement regarding arbitration of the claims. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2779-80 (2010) ("parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). Nevertheless, the claims of the plaintiffs are also encompassed within the dispute.

### 1. Claims of Justin Garcia

The claims of Justin Garcia are predicated upon actions taken in the repossession of his vehicle and reporting of deficiency balances, such as violations of the Fair Debt Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, the Collateral Recovery Act, and California's Consumer Credit Reporting Agencies Act. (*See generally* Doc. 9 at 8-19) Clearly, these claims stem for the contract he entered into to buy the vehicle. (Doc. 8-2 at 10) As an assignee, Santander is entitled to enforce the arbitration agreement via its express terms. (Doc. 10-8 at 11 ["Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by court action."] In addition, the nonsignatories may be compelled to arbitration where the claims are "based on the same facts and are inherently inseparable." *Boucher v. Alliance Title Co., Inc.*, 127 Cal.App.4th 262, 269 (2005).

The claims the plaintiffs bring against the non-signatory defendants are based upon the same set as facts as those raised against Santander, which elected to use the self-help remedy of repossession, carried out by the non-signatory defendants. Significantly, the arbitration agreement further provides that it encompasses "[a]ny claim or dispute… which arises out of or relates to [the buyer's] credit application, purchase or condition of th[e] vehicle,[the] contract or any resulting

transaction or relationship." (Doc. 19-1 at 8) Based upon the broad specification, the claims of Justin Garcia –which relate to actions taken during the course of and following the repossession – are encompassed in the arbitration provision.[4]

### 2. Claims of Andrew Garcia

Plaintiffs observe, "Andrew Garcia signed no arbitration agreement, and was merely passenger in Justin Garcia's vehicle during the violent repossession." (Doc. 22 at 9) Plaintiffs argue that "[a]s an innocent bystander who has no relationship with any defendant, his claims cannot be compelled to arbitration." (*Id.*)

> Arbitration is contractual by nature–"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960). Thus, while there is a strong and "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) (quotations omitted), such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract. "It does not follow, however, that under the [Federal Arbitration] Act an obligation to arbitrate attaches *only* to one who has personally signed the written arbitration provision." *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993).

*Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. N.Y. 1995) (emphasis added).

Indeed, under California law a nonsignatory to an arbitration clause may be required to arbitrate claims where the causes of action are "intimately founded in and intertwined" with the claims of the signatory. *See Goldman v. KPMG, LLP, 173 Cal.App 4th 209*, 221 (2009). Plaintiffs seek to distinguish *Goldman* because the court there considered whether a nonsignatory could compel arbitration against a signatory. However, the rationale advanced by *Goldman* applies equally when a signatory seeks to compel arbitration against a nonsignatory.

In *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006), the Court reiterated its holding, issued in *Letizia v. Prudential Bache Securities, Inc*., 802 F.2d 1185 (9th Cir.1986), which found the

---

[4] The plaintiffs argue that the motion is premature because not all defendants have been served. However, the fact that plaintiffs have failed to serve these defendants, despite the passage of many months, is a situation within their control. Their failure to serve the proper defendants is not a basis to resist the arbitration provision. At this time, the Court has no confidence that any other defendants will ever appear. *See* Footnote 2.

15

doctrine of estoppel applies to enforce an arbitration agreement against a nonsignatory. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, at 1101. Equitable principles "preclude[ ] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–1046 (9th Cir.Cal.2009) quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir.2004)). This rationale makes sense "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.' " *Mundi*, at 1045–1046 quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir.2001). Thus, the pertinent question is whether Andrew Garcia has exploited the agreement such that he should be bound by the arbitration agreement.

It is beyond dispute, both plaintiffs' claims arise out of the Retail Installment Sale Contract because, of course, this is the agreement that permits repossession in appropriate circumstances. (Doc. 8-2 at 10 ¶ 3) Absent this agreement, neither plaintiff would be permitted to pursue damages under the Fair Debt Collection Practices Act, Rosenthal Fair Debt Collection Practices Act, or the Collateral Recovery Act. Likewise, the Court finds it important that in the first amended complaint, plaintiffs make no effort to distinguish the claims of Justin Garcia from those of Andrew Garcia for violations of the Fair Debt Collection Practices Act, Rosenthal Fair Debt Collection Practices Act, or the Collateral Recovery Act—and instead, base the claims for both plaintiffs on the same factual allegations. (*See* Doc. 8-19) Thus, either both plaintiffs will succeed or both will fail in this action based upon the same proof. Indeed, the plaintiffs' agree that their matters should be decided together, though they argue that the claims should remain in federal court[5], because they agree that litigating this case in different forums poses significant risks of inconsistent judgments. Given these considerations, the Court finds that Andrew Garcia relies upon the RISC for the basis for his claims, the claims of the plaintiffs are

---

[5] Permitting Justin Garcia to avoid his obligations imposed by the arbitration provision would improperly frustrate the agreement and thwart the "federal policy in favor of arbitration." *Sam Reisfeld & Son Imp. Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976). Thus, the court is faced with the Hobson's choice of recommending severance of the plaintiffs' cases—which no one seeks—maintaining the action in this court and thwarting the arbitration provision or referring the entire matter to arbitration. Based upon its review of the authorities, the Court is convinced of the wisdom of the final option.

16

"intimately founded in and intertwined" with one another's and they are all subject to arbitration.

### C. Entry of a Stay

The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C § 3.

Indeed, the Seventh and Tenth Circuits have adopted the view that a stay is the most reasonable approach than a dismissal, explaining: "[I]t would be 'wasteful' and inconsistent 'with principles of judicial economy' for a court which has jurisdiction of the parties to be required to dismiss the parties, and to compel one of them to sue in another forum to enforce its award under § 9." *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 868 F. Supp. 1244, 1250 (D. Kan. 1994) *aff'd*, 119 F.3d 847 (10th Cir. 1997), quoting *In re VMS Sec. Litig.*, 21 F.3d 139, 145 (7th Cir. 1994). Accordingly, the Court recommends the matter be stayed pending the completion of arbitration.

### VII. Findings and Recommendations

Defendant has met its burden of demonstrating that there is a valid arbitration agreement, which encompasses the issues in dispute. As a result, "there is a presumption of arbitrability" and Defendants' motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650. Accordingly, the Court **RECOMMENDS**:

1. Defendant's motion to compel arbitration be **GRANTED**;
2. The clause concerning the selection of the arbitrator be severed from the arbitration provision;
   a. the Court propose JAMS, AAA and ADR Services, Inc. as potential arbitration agencies;
   b. each side be permitted to exercise one "strike" such that the one agency remaining will act as the arbitration agency in the action;

3. The parties be ordered to meet and confer regarding the selection of an arbitrator and to file a joint status report within thirty days of the date of service of any order adopting these recommendations, identifying the arbitrator selected;

4. The matter be **STAYED** to allow the completion of the arbitration;

5. Counsel be directed to file a joint status report within 120 days and every 120 days thereafter describing the status of the arbitration;

6. Counsel be directed to file a joint status report within 10 days of the determination by the arbitrator; and

7. The Court retain jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed within seven days of the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **June 27, 2017**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE